## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

DAVID DEACON DITTER, #322174,

        Petitioner,

v.                       CIVIL ACTION NO. 2:06cv237

GENE M. JOHNSON, Director of the
Virginia Department of Corrections,

        Respondent.

### UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was initiated by petition for a writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Local Civil Rules of the United States District Court for the Eastern District of Virginia.

### I. STATEMENT OF THE CASE

### A. Background

On May 14, 2003, Petitioner, David Deacon Ditter ("Ditter"), was convicted in the Circuit Court of the City of Richmond, Virginia ("Circuit Court") for aggravated malicious wounding, use of a firearm, and attempted robbery.[1] The trial court heard argument on Ditter's sentencing on June 6, 2003, after which Ditter

---

[1]Ditter was represented at trial by Todd B. Stone, Esq., at the sentencing by Stacy Davenport, Esq., and on appeal by Charles C. Cosby, Jr., Esq. ("Cosby").

received a total active sentence of thirty-three (33) years.[2]

On November 24, 2003, Ditter filed his petition for appeal in the Court of Appeals of Virginia ("Court of Appeals"),[3] which denied the appeal on the merits by written order issued on March 12, 2004 (per curiam decision) ("first direct appeal").[4] Record No. 1511-03-2.  On April 1, 2004, Ditter filed his petition for appeal of this decision to the Supreme Court of Virginia ("second

---

[2]Ditter was sentenced to three (3) years for the use of a firearm charge and fifty (50) years, of which twenty (20) years was suspended for life, for the aggravated malicious wounding charge. The trial court suspended imposition of any sentence on the attempted robbery charge for twenty (20) years.

[3]In this appeal, Ditter raised the following assignments of error:
1. The trial court abused its discretion in failing to grant a motion for a mistrial after the Commonwealth's failure to disclose exculpatory evidence was discovered at trial;
2. The trial court erred in admitting hearsay testimony; and
3. The evidence was insufficient as a matter of law to prove Ditter's guilt beyond a reasonable doubt.

[4]The Court of Appeals rejected the appeal on the following grounds:
I. The trial court did not abuse its discretion in denying Ditter's motion for a mistrial because the possible exculpatory evidence was not inherently exculpatory and, in any event, was not material, and because there was no due process violation that warranted a mistrial;
II. The trial court did not err in admitting hearsay testimony of the victim because the victim was available for cross-examination at trial; and
III. The evidence and testimony of the Commonwealth's witnesses, when viewed in the light most favorable to the Commonwealth, Archer v. Commonwealth, 26 Va. App. 1, 11 (1997), was sufficient for the trial court to have concluded beyond a reasonable doubt that Ditter committed the charged offenses.

2

direct appeal").[5]  On July 16, 2004, the Supreme Court of Virginia summarily refused the petition for appeal.  Record No. 040691.  On July 12, 2005, Ditter executed a <u>pro se</u> petition for writ of habeas corpus in the Circuit Court of the City of Richmond ("state habeas petition").[6]  On August 26, 2005, the Circuit Court denied the state habeas petition as being procedurally barred under <u>Slayton v. Parrigan</u>, 215 Va. 27 (1974) (claims that could have been raised at trial or on direct appeal are not cognizable in habeas).[7]  Case No.

---

[5]In this appeal, Ditter raised the same assignments of error as in his first direct appeal, namely that:
1. The trial court abused its discretion in failing to grant a motion for a mistrial after the Commonwealth's failure to disclose exculpatory evidence was discovered at trial;
2. The trial court erred in admitting hearsay testimony; and
3. The evidence was insufficient as a matter of law to prove Ditter's guilt beyond a reasonable doubt.

[6]The state habeas petition was executed by Ditter on July 12, 2005, but was not ultimately received and filed by the Circuit Court until July 15, 2005.  In that petition, Ditter raised the following claims:
a. The trial court abused its discretion in failing to grant a motion for a mistrial based on allegedly contradictory testimony by two (2) of the Commonwealth's witnesses;
b. The trial court erred by failing to respond to a motion to strike the evidence made during the trial; and
c. The Commonwealth failed to disclose exculpatory evidence discovered at trial, namely that detective Wilson's testimony about having seen a shotgun and spent shell casing at the crime scene was contradicted by that of other witnesses.
Ditter also included another claim, what he labeled as claim "d" and characterized as "improper police procedure," based on Detective's Wilson testimony that he saw a shotgun and shell casing at the crime scene, though these items were not contained in the evidence property voucher collected by Officer Kelley.  However, Ditter conceded in his petition that this claim was never presented to a court.

[7]In its order, the Circuit Court stated that Ditter's state habeas petition raised only three (3) claims for relief (referred

3

LT-1673-BBC.   Ditter did not file a petition for writ of habeas

corpus in the Supreme Court of Virginia.   Instead, on October 31,

2005, Ditter executed a <u>pro se</u> petition for appeal of the Circuit

Court's denial of his state habeas petition in the Supreme Court of

Virginia ("appeal of state habeas petition"),[8] which was summarily

dismissed by the Supreme Court of Virginia on March 16, 2006.

Record No. 052314.

On April 17, 2006, while in the custody of the Virginia

Department of Corrections at the Wallens Ridge State Prison, Ditter

executed the instant federal petition for a writ of habeas corpus

_____

to as claims a, b, and c, <u>see supra</u> note 6), thus that court did
not address the "improper police procedure" claim (Ditter's claim
d).

[8]In that appeal, Ditter raised the following claims:
1. The trial court erred in not granting an evidentiary
hearing to hear Ditter's claim that the trial court abused its
discretion in failing to grant a motion for a mistrial based on
allegedly contradictory testimony by two (2) of the Commonwealth's
witnesses;
2. The trial court erred in not granting an evidentiary
hearing to hear Ditter's claim that the trial court erred by
failing to respond to a motion to strike the evidence made during
the trial;
3. The trial court erred in not granting an evidentiary
hearing to hear Ditter's claim that the Commonwealth failed to
disclose exculpatory evidence discovered at trial, namely that
detective Wilson's testimony about having seen a shotgun and shell
casing at the crime scene was contradicted by that of other
witnesses;
4. The trial court erred in not granting an evidentiary
hearing to hear Ditter's claim regarding "improper police
procedure" at the crime scene; and
5. The trial court erred in finding that his claims were
barred under the rule in <u>Slayton</u>, <u>supra</u>.

pursuant to 28 U.S.C. § 2254 ("Federal Petition").[9]   The Court
conditionally filed this petition on April 28, 2006, and the
petition was ultimately filed by the Court's Order dated May 5,
2006.   On May 26, 2006, Respondent filed his Rule 5 Answer and
Motion to Dismiss accompanied by a supporting memorandum and a
Notice of Motion Pursuant to Local Rule 7(J).[10]   On June 12, 2006,
Ditter filed his Brief in Opposition.[11]

### B. Grounds Alleged

Ditter now asserts in this Court that he is entitled to relief
under 28 U.S.C. § 2254 for the reasons substantially as follow:

---

[9]The Federal Petition was executed on April 17, 2006, was
received by the United States District Court for the Eastern
District of Virginia, Richmond, on April 24, 2006, and was
conditionally filed with this Court on April 28, 2006 since it was
not accompanied by either the $5.00 filing fee or a request to
proceed in forma pauperis.   Subsequently, Ditter paid the required
$5.00 filing fee, and the Court ordered the petition to be filed as
of May 5, 2006.   Pursuant to the Rules Governing Section 2254 Cases
in the United States District Courts, Rule 3(d), as amended on
December 1, 2004, the Court recognizes the prison mailbox rule for
federal habeas petitions.   Accordingly, as there is no evidence in
the record to the contrary, the Court will assume that Ditter
delivered his federal habeas petition for mailing on the date he
signed it, April 17, 2006.   Further, the Court considers Ditter's
petition as filed, for statute of limitations purposes, on that
date.

[10]The Court notes that Respondent's Notice of Motion
erroneously referred to the Local Rule 7(J), instead of Local Civil
Rule 7(K), but the Notice complied with the requirements of
Roseboro v. Garrison, 582 F.2d 309 (4th Cir. 1975).   This included
advising Ditter that he had twenty (20) days in which to file a
response to the Motion to Dismiss.

[11]This brief was executed on June 7, 2006, but was not received
by the Court until June 12, 2006.

(1)     That the police used improper procedures in collecting evidence at the crime scene (state habeas claim d; appeal of state habeas petition claim 4);

(2)     That the Commonwealth failed to disclose certain exculpatory evidence that was discovered at trial, namely that Detective Wilson's testimony about having seen a shotgun and shell casing at the crime scene was contradicted by that of other witnesses (encompassed within first and second direct appeals claim 1; state habeas claim c; and appeal of state habeas petition claim 3); and

(3)     That the trial court abused its discretion in not granting a mistrial after hearing Detective Wilson's testimony (first and second direct appeals claim 1; state habeas claim a; and appeal of state habeas petition claim 1).

Ditter asserted essentially the same claims for relief in his various state court appeals and/or in his state habeas petition. Ditter asserted claim 3 on both of his direct appeals, in his state habeas petition, and in the appeal of the state habeas petition.[12] Claim 2 was not directly raised by Ditter in his direct appeals, but it is a derivative of claim 3 and concerns an issue that the Court has already determined was decided by the Court of Appeals.

---

[12]The Court of Appeals rejected that claim on the merits in Ditter's first direct appeal, Record No. 1511-03-2, and the Supreme Court of Virginia summarily refused the petition in Ditter's second direct appeal, Record No. 040691. Also, the Circuit Court rejected that claim when it dismissed Ditter's state habeas petition under Slayton, Case No. LT-1673-BBC, a decision that was summarily affirmed by the Supreme Court of Virginia's refusal of Ditter's petition for appeal of the state habeas petition, Record No. 052314.

See supra note 12.[13]   Claim 1 was not raised by Ditter on direct appeal, but it was raised in his state habeas petition.[14]

## II. **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Court FINDS that claim 1 is procedurally defaulted before this Court.  The Court further FINDS that the remaining claims 2 and 3 should be addressed on the merits.[15]

---

[13]In rejecting claim 3, the Court of Appeals appears to have decided the issue when it found that the allegedly exculpatory evidence was neither material nor exculpatory.  Record No. 1511-03-2.  The Supreme Court of Virginia summarily affirmed that decision when it refused the petition for appeal of that decision.  Record No. 040691.

[14]As discussed supra, that claim was dismissed by the Circuit Court as barred under Slayton, and that dismissal was summarily affirmed by the Supreme Court of Virginia's refusal of the petition for appeal.

[15]The Court notes that Respondent has not addressed whether Ditter's Federal Petition was timely filed.  It appears that Ditter's conviction became final on October 14, 2004, which was ninety (90) days after the denial of his second direct appeal on July 16, 2004 by the Supreme Court of Virginia and the date upon which the period for seeking direct review of his conviction by the United States Supreme Court expired.  See U.S. Sup. Ct. R. 13(1); Harris v. Hutchinson, 209 F.3d 325, 328 n.1 (4th Cir. 2000). Accordingly, Ditter had a one (1) year statute of limitations from that date, or until October 14, 2005, in which to file his habeas petition with this Court.  28 U.S.C. § 2244(d)(1).  However, because the limitations period may be tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ," 28 U.S.C. § 2244(d)(2), Ditter was entitled to tolling for two-hundred seventy-four (274) days while his state habeas petition was pending in the Supreme Court of Virginia (between July 12, 2005, the date it was filed, and March 16, 2006, the date the appeal was dismissed).  Accordingly, Ditter had until June 19, 2006 to file his federal habeas petition (June 18, 2006 was a Sunday).  Because the instant petition was considered as filed on April 17, 2006, for statute of limitations purposes, it was timely filed in this Court.

## A. Exhaustion Requirement

Ordinarily, a state prisoner must exhaust remedies available in state court before seeking federal habeas corpus relief. 28 U.S.C. § 2254(b) and (c); Picard v. Conner, 404 U.S. 270, 275 (1971). As such, this Court cannot grant habeas relief unless Ditter has exhausted the remedies available to him in the courts of Virginia. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. See O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999) (if a claim has been addressed by the state's highest court on either direct or collateral review, it is exhausted) (citing Brown v. Allen, 344 U.S. 443, 447 (1953)); see also Skipper v. French, 130 F.3d 603, 610 n.4 (4th Cir. 1997). "Section 2254(c) requires only that state prisoners give state courts a fair opportunity to act on their claims," thus a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Id. at 844-45 (emphasis in original). In order for a claim to be considered exhausted, it must be "'fairly presented' to the state courts," which means "that both the operative facts and the 'controlling legal principles'" must be presented to the state court." Matthews v. Evatt, 105 F.3d 907, 910-11 (4th Cir. 1997) (quoting Pickard v. Connor, 404 U.S. 270, 275-78 (1971); Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir.

8

1992)); <u>Pruett v. Thompson</u>, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), <u>aff'd</u> 996 F.2d 1560 (4th Cir. 1993) (exhaustion requirement is satisfied when "allegations advanced in federal court . . . [are] the same as those advanced at least once to the highest state court.")

It is the petitioner's burden to prove that his claims have been exhausted. <u>Matthews</u>, 105 F.3d at 911.  If his claims could not be exhausted in state court because they were procedurally barred in state court pursuant to an adequate and independent state procedural rule, the claims are procedurally defaulted in federal court and federal habeas review is ordinarily barred. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Matthews</u>, 105 F.3d at 911 ("the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when . . . a state procedural rule would bar consideration if the claim was later presented to the state court").  Such claims are treated as procedurally defaulted and barred from this Court's review. <u>Clagett v. Angelone</u>, 209 F.3d 370, 378-79 (4th Cir. 2000).

Respondent has asserted that claims 1, 2, and 3 of Ditter's petition are exhausted, each having been properly raised on direct appeal to the Supreme Court of Virginia or in the state habeas petition that was refused on appeal by the Supreme Court of Virginia.  Brief in Support of Rule 5 Answer and Motion to Dismiss, at 2-3 ("Respondent's Brief").  The Court concurs with Respondent's

assertions and FINDS that each of Ditter's claims have been exhausted.

As to claim 3, Ditter asserted the claim both in his direct appeals and in his state habeas petition. As to claim 2, though Ditter did not directly raise the issue in his direct appeals, that claim derives from claim 3 and concerns an issue that the Court has already determined was decided by the Court of Appeals. See supra notes 12, 13. The dismissal of both claims was affirmed by the Supreme Court of Virginia, thus claims 2 and 3 are exhausted under O'Sullivan, supra, and the Court can address their merits.

As to claim 1, Ditter included that claim in his state habeas petition, but he conceded that it was never raised in his direct appeals. As Respondent asserts, therefore, claim 1 is simultaneously exhausted and procedurally defaulted. Ditter had knowledge of the facts of this claim at the time he filed his direct appeals, and he could have raised this claim. Because he failed to do so, this claim would now be barred from review by the Supreme Court of Virginia. Va. Code Ann. § 8.01-654(B)(2). Insofar as this rule has been held to be an "adequate and independent state ground" barring federal habeas review of the dismissed claims, Pope v. Netherland, 113 F.3d 1364, 1372 (4th Cir. 1997), claim 1 is exhausted due to procedural default. Coleman, 501 U.S. at 750.

10

## B.  Procedural Default

The Court has determined that claim 1 is procedurally defaulted because it was not raised on direct appeal and thus it was not fairly presented to the Supreme Court of Virginia. Were he now to raise claim 1 in the Supreme Court of Virginia, this claim would be procedurally defaulted under Virginia law, Va. Code Ann. § 8.01-654(B)(2).  See Clagett, 209 F.3d 370 at 378-79.

### 1.  Limited Exceptions to Procedural Default

Although claim 1 is procedurally defaulted, Ditter may still obtain review of his claim if he can establish either: (1) cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice because he is actually innocent of the crime for which he was convicted. Clagett, 209 F.3d at 379 (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)); Weeks v. Angelone, 176 F.3d 249, 269 (4th Cir. 1999).

Cause refers to "some objective factor external to the defense" that impeded compliance with the state's procedural rule. Strickler v. Greene, 527 U.S. 263, 283 n.24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

> Objective factors that may constitute "cause" include: (1) "interference by officials that makes compliance with the State's procedural rule impracticable"; (2) "a showing that the factual or legal basis for a claim was not reasonably available to counsel"; (3) novelty

11

of the claim; and (4) constitutionally
ineffective assistance of counsel.

Wright v. Angelone, 151 F.3d 151, 160 n.5 (4th Cir. 1998) (quoting

McCleskey v. Zant, 499 U.S. 467, 493-94 (1991)).  An absence of due

diligence by the petitioner will defeat an assertion of cause.  See

Hoke v. Netherland, 92 F.3d 1350, 1354 n.1 (4th Cir. 1996).

Ditter has attempted to explain why claim 1 was not presented
on appeal.  Federal Petition, at 6.  Specifically, while Ditter
appears to concede that the claim was never raised in his direct
appeals, he appears to assert that this failure was attributable to
his "paid counsel for appeal." Id. at 9.  However, in this case,
none of the above-referenced factors support a finding of cause.
First, Ditter has failed to make any showing that action by the
government prevented him from raising the issue on appeal.  See
Smith v. United States, 2005 WL 2657386 at *2 (E.D. Va.)  Second,
Ditter has not made a credible showing that he or his counsel were
unaware of the circumstances underlying this claim.  See id.
Ditter certainly raised the prosecution's failure to produce the
allegedly exculpatory evidence in each of his state-court direct
appeals and his habeas corpus petition, which was discovered at
trial and which directly implicated the police crime-scene
investigation of which Ditter now complains.  Thus, he must have
been aware of the existence of such a claim during the direct-
appeal process.  Third, Ditter does not make any assertion of a new
rule of law that would justify cause in this instance.

12

Finally, the Court has determined that Ditter cannot establish cause for claim 1 by asserting ineffective assistance of counsel at this juncture because he never exhausted the ineffective assistance of counsel claim in a state court proceeding.  See Edwards v. Carpenter, 529 U.S. 446, 453 (2000); see also Williams v. French, 146 F.3d 203, 210 n.9 (4th Cir. 1998) (ineffective assistance of counsel claim "must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default") (citing Murray v. Carrier, 477 U.S. 478, 489 (1986)).

In sum, Ditter simply failed to timely raise claim 1 to the Supreme Court of Virginia.   Consequently, Ditter has not established cause for his failure to comply with the applicable state procedural rules.[16]

Additionally, Ditter does not provide adequate grounds for a determination of prejudice to excuse his failure to raise the issue

---

[16]Indeed, even were the Court to construe Ditter to argue that he should be excused for his unfamiliarity with the legal system and his pro se status, such factors do not constitute cause because these are not "objective factor[s] external to the defense" under Murray, 477 U.S. at 488.  See, e.g., Dellinger v. Bowen, 301 F.3d 758, 766 (7th Cir. 2002) ("youth and lack of education do not constitute the type of external impediment sufficient to excuse a procedural default"), cert. denied, 537 U.S. 1214 (2003); Washington v. James, 996 F.2d 1442, 1447 (2d Cir. 1993) (ignorance or inadvertence do not constitute cause to excuse a procedural default); United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (pro se petitioner's ignorance and misconceptions about the operation of the statute of limitations do not justify equitable tolling because they are not extraordinary circumstances beyond his control).

in his direct appeals in the state court.  To establish prejudice, it is the petitioner's burden to demonstrate "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Williams, 146 F.3d at 210 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (other citations omitted).  Ditter makes the conclusory allegation that the police investigation at the crime scene was inadequate because the government cannot produce the shotgun and spent shell casing that allegedly were seen at the crime scene.  Federal Petition at 9.  The Court of Appeals rejected this claim when it found that the possible existence of the shotgun at the crime scene "was not inherently exculpatory" and did not demonstrate "a reasonable probability [that] the outcome of the proceeding would have been different."  Record No. 1511-03-2 at 2. Similarly, in the instant petition, Ditter has failed to show how the outcome of his case would have been different had that allegedly exculpatory evidence been located.  See infra Section II.C.2.  Consequently, Ditter has not established the requisite prejudice for his failure to comply with the applicable state procedural rules.

The Court does not consider the "miscarriage of justice" exception.  It is the petitioner's burden to establish the exception and Ditter has not provided evidence that but for the

14

asserted constitutional errors, no reasonable juror would have found him guilty. See Hazel v. United States, 303 F. Supp. 2d 753, 761 (E.D. Va. 2004) (citing Herrera v. Collins, 506 U.S. 390, 401-02, 429 (1993) (White, J., concurring), incorporating the standard established in Jackson v. Virginia, 443 U.S. 307, 317 (1979)).

Accordingly, the Court FINDS that the claim 1 raised in the instant petition is procedurally barred before this Court, and recommends that this claim should be DENIED.

**C. Claims Rejected on the Merits in State Proceedings**

The Court now considers claims 2 and 3 on the merits. Because claim 2 is a derivative of claim 3, the Court will first address claim 3 and then claim 2.

**1. Merits Analysis**

A federal court may not grant relief on a habeas claim previously adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d). In drafting this statute, Congress "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with

federal law or apply federal law in an unreasonable way." <u>Williams v. Taylor</u>, 529 U.S. 362, 386 (2000).  <u>See also</u> <u>Bell v. Jarvis</u>, 236 F.3d 149, 157 (4th Cir. 2000) (recognizing that, for claims adjudicated on the merits by the state court, the federal court "is limited by the deferential standard of review set forth in § 2254(d), as interpreted by the Supreme Court in <u>Williams</u>[].") Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." <u>Williams</u>, 529 U.S. at 387.  Moreover, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be [objectively] unreasonable." <u>Id.</u> at 411.

### 2. Claim 3

In claim 3 Ditter asserts that the trial court abused its discretion in denying the defense's motion for a mistrial after it was discovered at trial that the Commonwealth had failed to disclose exculpatory evidence.  Federal Petition, at 9. Specifically, Ditter argues that the testimony of Detective Wilson at trial, who stated that he had seen a shotgun and a spent shell casing at the crime scene, but such evidence had not been produced by the Commonwealth despite the defense's motion for discovery and

16

inspection of evidence, should have led the trial court to declare a mistrial. Id. at 9, 16. Ditter raised this claim on his direct appeal to the Supreme Court of Virginia, which summarily refused that petition.[17] When the Supreme Court of Virginia summarily refuses a petition for appeal, this Court looks to the previous state court decision as the last reasoned state judgment on that claim. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In the instant case, therefore, the Court looks to the decision of the Court of Appeals of Virginia as the last reasoned state judgment on this claim. In that decision, the Court of Appeals examined the entire record and determined that "[b]ecause the possibly exculpatory evidence was not material, there was no due process violation that warranted a mistrial and, therefore, the trial court did not abuse its discretion in denying [Ditter's] motion for a mistrial." Record No. 1511-03-2, at 2. To the extent

---

[17]The Court notes that in presenting this claim in his direct appeals, Ditter raised only the failure to produce evidence of the shotgun that Detective Wilson testified he saw at the crime scene and that contradicted the testimony of another witness who testified that he saw the accused run out of the house with the shotgun. First direct appeal, at 3, 5; second direct appeal, at 5-6. It was not until his state habeas petition that Ditter also raised the issue of the Commonwealth's failure to produce evidence of the spent shell casing again as testified to by Detective Wilson. State habeas petition, at 6-7. Though the Court of Appeals' analysis in rejecting the first direct appeal focused only on the presence of the shotgun evidence, it is not unreasonable to interpret that analysis as also encompassing evidence of the spent shell casing. In any event, contrary to Respondent's assertion, Ditter did raise the issue as to both pieces of evidence in his state-court proceedings.

17

this determination only involved application of state law, it is not subject to review by this Court. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). An underlying claim that purports to concerns a federal constitutional issue, on the other hand, is not prohibited from federal habeas review of the claim. See Goins v. Angelone, 226 F.3d 312, 320, n.3, cert. denied, 531 U.S. 1046 (2000), abrogated on other grounds by Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000). In that event, federal habeas review of the claim necessarily involves review of the earlier state court decision that addressed the claim. See generally id. In the instant case, Ditter suggests that the Commonwealth's failure to disclose exculpatory evidence violated his rights to due process under the Fourteenth Amendment. Though Ditter did not cite any legal authority to support the allegations in the instant petition, it appears to the Court, as the Court of Appeals determined, that this claim should be analyzed under the confines of Brady v. Maryland, 373 U.S. 83, 87 (1963) ("suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"), and its progeny, including Strickler v. Greene, 527 U.S. 263, 291 (1999) (no violation of Brady where there is merely a reasonable possibility that the

disclosure of impeachment evidence "might have produced a different result, either at the guilt or sentencing phases [of trial]"; to establish a <u>Brady</u> violation, a "petitioner's burden is to establish a reasonable <u>probability</u> of a different result.") (other citations omitted).[18]

In its decision, the Court of Appeals noted that under state law, the decision whether to grant a mistrial lies within the sound discretion of the trial court, and that decision will not be disturbed on appeal absent a showing of abuse of discretion. Record No. 1511-03-2, at 1 (citing <u>Cheng v. Commonwealth</u>, 240 Va. 26, 40 (1990)). The Court of Appeals further relied on <u>Goins v. Commonwealth</u>, 251 Va. 442, 456 (1996), for the proposition that the government's failure to disclose evidence violated <u>Brady</u> only if the defendant establishes that the undisclosed evidence was both exculpatory and material either to the defendant's guilt or to his punishment. Record No. 1511-03-2, at 1. Also, the Court of Appeals provided the following definitions:

> Exculpatory evidence is material if there is a

---

[18]The Court notes that in his direct appeals and state habeas petition Ditter asserted that the Commonwealth's failure to disclose exculpatory evidence, in the face of the defense's motion for discovery and inspection of evidence, violated his rights to due process under <u>Brady</u> and <u>Strickler</u>. Though Respondent did not mention <u>Brady</u> in his supporting memorandum, he does cite <u>Strickler</u> for the proposition that while the allegedly exculpatory evidence might have "created [the] reasonable <u>possibility</u> of [a] different result at trial, it did not create [the] requisite reasonable <u>probability</u> of a different outcome [at trial]." Respondent's Brief, at 5 (emphasis added).

> reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed to the defense.  A 'reasonable probability' is one which is sufficient to undermine confidence in the outcome of the proceeding.

Id. at 1-2 (citing Wilson v. Commonwealth, 25 Va. App. 263, 270 (1997)).  The Court has determined that these definitions are consistent with the Supreme Court's pronouncements in Brady and Strickler, supra.[19]

Based on these standards, the Court of Appeals reviewed the evidence, which included Detective Wilson's testimony that while at the crime scene he saw a shotgun leaning against a wall near the kitchen in the victim's apartment.[20]   Record No. 1511-03-2, at 2.

---

[19]As the Supreme Court stated in Strickler: there are three (3) components required to establish "a true Brady violation": (1) "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) "that evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued."  527 U.S. at 281-82.  The Court stated: "strictly speaking, there never is a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."  Id. at 281.  In Strickler, the Court affirmed the petitioner's conviction after finding that while he had established the first and second prongs under Brady, exculpatory evidence and the failure to disclose such evidence, he had not established a reasonable probability of a different outcome had that evidence been disclosed, thus he failed to meet the third prong of Brady.  Id. at 296.

[20]It appears that while Detective Wilson responded to the crime scene early in the investigation, he testified that he left the vicinity soon after seeing the shotgun because it was at the end of his shift.  See, e.g., second direct appeal, at 5-6.  Apparently, that information was never conveyed to the prosecuting attorneys. According to Ditter, there was no evidence of a shotgun or spent shell casings in the property voucher as testified to by another

This testimony conflicted with that of the victim's eleven-year-old son, Anthony Spencer ("Spencer"), who stated that he saw Ditter running from the house carrying a gun.[21]  Id. at 3.  Upon hearing Detective Wilson's testimony, Ditter moved for a mistrial on the basis that the police had never informed him about having found a shotgun at the crime scene and that such evidence was exculpatory. Id. at 2.  In response, the Commonwealth stated that it also had no knowledge that Detective Wilson had seen the shotgun at the crime scene, and, in any event, the Commonwealth did not have a shotgun in evidence that it failed to disclose.  Id.

The Court of Appeals determined that "the possible existence of a shotgun in the apartment was not inherently exculpatory," and that even if the evidence that Detective Wilson had seen a shotgun had been revealed to the defense, there was not "a reasonable probability that the outcome of the proceeding would have been different."  Id.  The Court finds that this was neither an unreasonable determination of the facts of the case nor an unreasonable application of federal law.  In particular, the Court notes that Ditter does not explain how the knowledge about the

---

police officer, John Kelley.  Federal Petition, at 6.

[21]According to the Court of Appeals, Spencer testified that he saw Ditter enter the home he shared with the victim (his mother), and after Spencer went into his bedroom he heard Ditter demand money from the victim, and then Spencer heard a gunshot.  Record No. 1511-03-2, at 3.  Spencer further testified that when he exited his room after hearing the gunshot, he saw Ditter running though an alley carrying a gun.  Id.

shotgun at the crime scene would have changed the outcome of the trial.  Ditter merely asserts that "had the evidence been properly gathered the result of the proceeding could have been different," which does not rise to the standard set forth in Brady and Strickler, supra.  Petitioner's Brief, at 16-17.  Ditter appears to argue that without this information he was "deprived of a defense" because it "would have supported his alibi," and that the information "would have impeached the Commonwealths [sic] only two witnesses," namely, the victim and her son.  Id. at 16.  Ditter also argued that if the shotgun had been recovered it could have been tested for fingerprints.  Id.

There was no evidence presented that the gun seen by Detective Wilson was the same as that seen by Spencer, and there is no evidence from which the Court can conclude that the outcome of the trial – at either the guilt or sentencing phase – would have been different.  In particular, as found by the Court of Appeals, the trial court heard and accepted the testimony of the Commonwealth's witnesses, and there was sufficient evidence for the trial court to have concluded beyond a reasonable doubt that Ditter committed the charged offenses.[22]   Record No. 1511-03-2, at 3.   The Court of

---

[22]This included the eyewitness testimony of the victim, Marie Spencer, who testified that she knew Ditter previously and positively identified Ditter as the man who shot her in her home, and her son, Anthony Spencer, who testified that he saw Ditter come to the victim's home, overheard Ditter demand money from his mother and, after he heard a gunshot, saw Ditter running from the crime scene.  Record No. 1511-03-2, at 3.

Appeals also found that any conflicts in the evidence between what Detective Wilson testified that he saw and that of the victim and her son "were not substantial and were considered by the fact finder."[23]   Id. (citing Bell v. Commonwealth, 22 Va. App. 93, 99 (1996).

Based on the foregoing, this Court FINDS that Ditter has failed to show either that the state court unreasonably determined the facts in his case or that the state court unreasonably applied federal law in dismissing claim 3.   As such, this Court RECOMMENDS that claim 3 be denied.

### 3.   Claim 2

In claim 2, Ditter asserts that the Commonwealth's failure to disclose the exculpatory evidence regarding Detective Wilson having seen the shotgun and spent shell casing at the crime scene constituted "prosecution misconduct."   Federal Petition, at 7-8. The facts underlying this claim mirror those raised in claim 3, supra.   As discussed for claim 3, supra, because the Supreme Court of Virginia summarily refused Reaves' petition for appeal, this Court must look to the previous decision by the Court of Appeals of Virginia as the last reasoned state judgment on this claim.   Ylst, 501 U.S. at 803.

---

[23]The Court further notes the "credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."   Sandoval v. Commonwealth, 20 Va. App. 133, 138 (1995).

The Court has determined that the Court of Appeals decided this claim indirectly when it determined the evidence at issue was neither exculpatory nor material, Record No. 1511-03-2, at 2.  In that decision, the Court of Appeals made a factual finding that the Commonwealth's prosecuting attorney claimed to have no knowledge of the existence of the evidence at issue, Id. at 2, however, the prosecutor's subjective intent or bad faith is not determinative of a violation under Brady.  Brady, 373 U.S. at 1197.  Consequently, even assuming the prosecutor's actions, or inactions, in the instant case constituted misconduct, Ditter cannot establish a Brady violation in the face of the Court of Appeals' finding that the evidence at issue was neither exculpatory nor material.

For the same reasons stated in relation to claim 3, therefore, the Court FINDS that Ditter has failed to show either that the state court unreasonably determined the facts in his case or that the state court unreasonably applied federal law in dismissing claim 2.  As such, this Court RECOMMENDS that claim 2 be denied.

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that Ditter's petition for writ of habeas corpus be DENIED, that Respondent's motion to dismiss be GRANTED, and that all of Ditter's claims be DISMISSED WITH PREJUDICE.

Ditter has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003).

## IV.  <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, <u>see</u> 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof. <u>See</u> Fed. R. Civ. P. 72(b).

2.  A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>,

474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984);

<u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

Entered on December 28, 2006

_____/s/_____
F. Bradford Stillman
United States Magistrate Judge

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report and Recommendation was mailed

this date to the following:

David Deacon Ditter, #322174
Wallens Ridge State Prison
P.O. Box 759
Big Stone Gap, Virginia 24219

Robert H. Anderson, III, Esquire
Senior Assistant Attorney General
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219


Fernando Galindo,
Acting Clerk of Clerk


By: _____
Deputy Clerk
December    , 2006